JULIUS WILLSEN, as Administrator, etc., of LAWRENCE WILLSEN, Deceased, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY, Respondent.

*Negligence — proper scope of the cross-examination of a motorman as to the manner in which he ran the car.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, a boy between five and six years of age, who was run over by one of the defendant's street cars on Lexington avenue between Ninety-sixth and Ninety-seventh streets in the city of New York, the plaintiff's evidence tended to show that the intestate, when running after a ball, fell upon the defendant's track some distance in front of one of the defendant's cars; that the motorman of the car was not looking ahead, but was looking up at one of the windows on the side of the street and that, although he had abundant time in which to stop the car, which was going down grade at a very high rate of speed, he failed to do so.

The evidence given on behalf of the defendant tended to show that the motorman was looking straight ahead; that the intestate was standing on the pavement and that when the car was close to him he suddenly ran upon the track and fell down; that the motorman had the car under complete control, but that the child was so close to the car when he went upon the track that it could not be stopped. The motorman was sworn on behalf of the defendant and denied that he was not looking ahead at the time of the accident or that the car was running at a high rate of speed.

*Held*, that it was error to refuse to allow the plaintiff to cross-examine the motorman as to the speed at which he was accustomed to operate his car at particular points on the defendant's line, including the place where the accident occurred; his obedience to orders; the operation of the car in front of a school house located a short distance from the place of the accident; his knowledge that people were accustomed to cross the avenue at places which were not regular crossings; his application of the brake; the statements which he had made concerning the accident and whether, upon a former trial, he had either denied, admitted or failed to deny that he was not looking ahead at the time of the accident, but was looking up at a window on the side of the street.

APPEAL by the plaintiff, Julius Willsen, as administrator, etc., of Lawrence Willsen, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of December, 1901, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of December, 1901, denying the plain-

tiff's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 3d day of January, 1902, denying the plaintiff's motion for an amendment of the record of the trial.

This action is brought for the purpose of recovering damages for the alleged negligent killing of the plaintiff's intestate, by being run over by one of the defendant's cars. The deceased was an infant between five and six years of age and the accident took place on Lexington avenue between Ninety-sixth and Ninety-seventh streets in the city of New York. The plaintiff's evidence tended to show that the child was playing on the sidewalk with its fifteen-year-old brother, and in going after a ball fell on defendant's north-bound track; that the motorman on the car was not looking ahead, and although he had abundant time in which to stop the car, which was going down grade and at a very high rate of speed, he failed to stop it, and the child was so injured by the car that it died on account thereof. On the part of the defendant, evidence was given tending to show that the motorman was looking straight ahead; that the child was standing on the pavement; that when the car was close to it the child suddenly ran upon the track and fell down; that the motorman had the car under complete control, but at the time when the child went upon the track it was so close to the car that it could not be stopped, and the injuries received were unavoidable.

*William McArthur*, for the appellant.

*Henry Melville*, for the respondent.

Hatch, J.:

This case, as presented upon the evidence, authorized the jury to find a verdict in favor of either party thereto, and their finding in favor of the defendant cannot be disturbed for lack of evidence to support it, for if the testimony of the defendant was believed by the jury, as their verdict indicates it was, it shows that the defendant was guilty of no negligence and that the death was the result of an unavoidable accident. The testimony of the gripman upon this question was of the last consequence to the defendant, as he

gave important and controlling testimony bearing thereon, and the plaintiff became entitled to the fullest latitude in cross-examination of such witness respecting the material part of his testimony. The plaintiff had given evidence tending to show that the gripman, when he reached Ninety-seventh street and near the point of the accident was not attentive to his duties, but was looking up at some one in the window of a house upon the street and was laughing at somebody in the window. This testimony was denied by the gripman. Testimony was also given by the plaintiff tending to show that the car was running at a rapid rate of speed at the point of the accident, and had been so running before it reached such point. This testimony was also contradicted by the gripman. Upon cross-examination of this witness, he was asked what the rate of speed was at which the car was running when the boy fell upon the track, and answered six to seven miles an hour. He was then asked : " What is the usual rate of speed ? " This was objected to as irrelevant and incompetent; that the only question before the court was the rate of speed at this time. Objection was sustained and an exception taken. He was then asked : " At what rate of speed were you in the habit of propelling your car at that period on a level plane ? ". Objection was interposed and the objection sustained. He was then asked as to the grade of the street at this particular place, and gave the grade of the street at that point as compared with the grade of the street at other points, showing that the grade between Ninety-sixth and Ninety-seventh streets was quite steep, and the witness stated that he knew he was approaching such grade. He was then asked : " Did it not occur to you at that particular locality that you should have slackened and gone less fast than usual ? " This was objected to as argumentative and the objection was sustained. He then stated that he was examined as a witness on the last trial and was asked : " Q. Did you deny or attempt to deny that you had been smiling or laughing up at the window of the west side ? " Objection was made and sustained. He was then examined as to how far the boy was in front of the car when he stumbled and fell, and answered between seven and eight feet. " Q. The car stopped when it passed the boy within five feet, isn't that so ? And that would make thirteen feet. How do you reconcile that with the statement you have made ? " Defendant's counsel objected

and the court sustained the objection. He was then questioned concerning when he put on the brake before the boy fell, and answered that he had the car under control going down the hill, and when he saw the boy he put on the brake. He was then asked how far away was the boy when the witness saw him leave the curb, and answered: "When I saw the boy first, 20 or 25 feet. Q. When you saw the boy leave the curb, that was the reason why you put on the brake?" Objection was interposed, that the question was argumentative, and the court sustained the objection. He was then asked as to whether he was excited at the time of the accident, and answered that he was not. He was then asked: "Q. At what rate of speed used you to go through that section of Lexington avenue, namely, 96th and 97th streets?" Defendant objected, and the objection was sustained. Plaintiff's counsel thereupon stated: "I want to show whether or not the gripman on that occasion deviated from his usual course." Objection was interposed and sustained. He was then asked if he knew that between Ninety-fifth and Ninety-sixth streets there was a schoolhouse, and that gripmen had orders to go slower past the schoolhouse. He testified that he slackened the rate of speed when passing the schoolhouse. He was then asked: "Q. What was the rate of speed that you were going at?" Objection was made as to the speed between Ninety-fifth and Ninety-sixth streets, and the objection was sustained. He was then asked if he signed a statement in connection with the transaction after the accident, and stated that he did. "Q. Did you give the same version as you do now?" This was objected to as calling for his opinion. The court sustained the objection. He was then asked "in substance?" Same objection was interposed and sustained. "Q. You were aware that persons crossed that avenue at places not the regular crossings; isn't that so?" It was objected to as immaterial, and the objection sustained. To all of these rulings of the court the plaintiff's counsel took an exception.

The cross-examination was proper and bore upon matter material to the issue which was being tried. It was cross-examination of a witness who had given important and evidently controlling evidence in favor of the defendant. The subject-matter to which the questions were directed were substantially all found in the direct testimony of the witness. Plaintiff had the right to lay before the jury

the character of the gripman and to question him fully as to the methods of operation of his car at particular places; the rate of speed at which he ran; his obedience to orders; the operation of his car before the schoolhouse within a short distance of the place of the accident; the crossing by people upon the street; the application of his brake; the statements which he had made concerning the accident; what he had testified to upon the former trial and whether or not his present version of the transaction upon the stand was not different from that which he had previously given upon the other trial or in his statement. These were all pertinent matters to lay before the jury, and from which they might determine whether the operation of the car at the time when the accident occurred was proper and whether the gripman's testimony was entitled to credence, and upon such subjects the plaintiff was entitled to examine the witness fully and completely.

In addition to this, whether or not the gripman just prior to the happening of the accident was attentive to his duties or was looking up at the windows of the adjoining houses, was a controlling question in the disposition of this controversy, and the plaintiff was entitled to ask and receive an answer as to whether upon the former trial he had either denied, admitted or failed to deny that he had been smiling and laughing up at the window on the west side of the street. Exclusion of such question was clearly erroneous. If he had been permitted to answer that question, he might have testified that he did not deny such fact upon the former trial, and therefrom the jury might conclude that the reason why he did not was because it was a fact and thereby discredit his statement upon the present trial that he had not been looking up at the windows just prior to the accident, and might have credited the testimony of the plaintiff upon such subject and therefrom rendered a verdict in favor of the plaintiff. We might conclude that the other questions, answers to which were excluded, would not be of sufficient consequence to the plaintiff to show prejudicial error, but the exclusion of the whole series of questions pertaining to the issue presented for determination, including that which might show that the gripman was not attentive to his duties, could scarcely help but work prejudicial error to the plaintiff's case. These errors are of so plain a character as to call for a reversal of the judgment.

The judgment and order should, therefore, be reversed and a new trial granted, with costs to the appellant to abide the event.

Van Brunt, P. J., Patterson, Ingraham and Laughlin, JJ., concurred.

The judgment and order reversed, new trial granted, costs to appelant to abide event.